IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

REGINA JACKSON,

                Plaintiff,

v.

THE HONORABLE GARY LOCKE.

                Defendant.

Action No. 08:10–CV–705—AW

## MEMORANDUM OPINION

Pending before the Court is Defendant's (Gary Locke, Secretary of the United States Department of Commerce) Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. No. 31). A hearing was held on this Motion on March 10, 2011. For the reasons articulated herein, the Court will **GRANT**-in-part and **DENY**-in-part Defendant's Motion to Dismiss.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Regina Jackson, filed this case on January 2, 2009 (Doc. 1), Defendant, Gary Locke (Secretary of the United States Department of Commerce) filed the instant Motion on July 2, 2010. (Doc. No. 31). This case arises out of events which occurred while Plaintiff was employed as the Budget Director for the Office of Oceanic and Atmospheric Research. Plaintiff alleges that on October 5, 2003, the Office of Oceanic and Atmospheric Research ("OAR") hired her to be its Budget Director. In this position, she was required to "plan, direct and oversee development and execution of the OAR budget and manage OAR's legislative formulation and execution functions with a staff of approximately 16." (Doc. No. 38, at 2).

Plaintiff indicates that several incidents occurred during her time at OAR which provide the basis for the instant suit. In the Spring of 2004, Plaintiff's first-level supervisor, Mark

Brown, interviewed Patricia Porter, Pam Stevenson, and Paul Johnson. These interviewees were black, according to Plaintiff. Plaintiff alleges that Brown asked the interviewees if they were friends of the plaintiff. While Brown was interviewing Porter, Plaintiff was present. In the middle of the interview, Plaintiff avers, Brown asked Plaintiff to leave the interview.

During another incident that Plaintiff experienced while at OAR, Plaintiff alleges that Brown told her that "he had a problem with Porter making more money than two white female staff members, Betty Hess and Sharon Shroeder."[1] *Id* at 3. Furthermore, Brown allegedly told Jackson that he "did not like Jackson and that Jackson was not as good as four white members of Jackson's staff."[2] *Id.*

Jackson informed her second-level supervisor Lisa Koch that she "felt that management was calling into question her judgment and integrity and that she had been hired as the token black division chief." *Id.* at 3. During a subsequent meeting in April 2004, Koch allegedly told Jackson that Brown was a "bigot." *Id.* at 3. Later in September 2004, Koch planned a mediation between Plaintiff and Brown. The purpose of this mediation was to improve the working relationship between the two of them. Plaintiff avers that during this mediation, she described "her embarrassment about Brown shutting her out of Porter's interview, his handling of Porter's pay and her concerns with being treated like administrative staff." *Id.* Plaintiff alleges that "as early as September 2004, "Brown was aware of . . . Jackson's feeling that she was a token black." *Id.*

---

[1] It is unclear from the pleadings whether Plaintiff is alleging that Brown remarked that he had a problem with Plaintiff making more than two women, who happened to be white, or if Brown said that he had a problem with Plaintiff making more than the two women because they were white and Plaintiff was black. The pleadings present ambiguity as to this comment and the way that Brown made this comment.

[2] Again, it is unclear whether Plaintiff is alleging that Brown told Johnson that she was not as good as the other members of her staff who happened to be white, or whether Brown specifically stated that Johnson was not as good as the white employees, thus specifically mentioning the race of the other employees.

According to Plaintiff, Brown required Mark Blades and Ken Jones to accompany her to division chief meeting, but the other division chiefs in the OAR Chief Financial Officer office (who were all white), attended these meetings without being accompanied by other employees. Jackson avers that she was treated like a staff person because she was assigned to do work, instead of being allowed to delegate the work to her staff.

In June, 2005, Walt Childress, Brown, and Jackson, had a meeting in which "Brown stated that one way of getting rid of Jackson would be to 'shoot Regina.'" Two months later, Jackson requested to attend the Association of Government Accountants' conference, requesting funding from the agency to attend this conference. Brown denied this request. Plaintiff also requested to attend the DuPont Corporation safety training program. Brown also denied this request.

The events that transpired while Plaintiff was employed at OAR motivated her to contact an EEO counselor to discuss a race discrimination charge against the agency. She first met with this counselor on August 29, 2005.

On or about September 23, 2005, plaintiff filed a formal complaint with the agency's Office of Civil Rights, in which she alleged that the office had discriminated against her on the basis of her race, retaliated against her on the basic of her race, retaliated against her for engaging in activities protected by Title VII, and had created a hostile working environment. (Doc. 31-2, at 9). The EEO investigated the following issues:

(1) Mr. Brown stated to Plaintiff that one way to get rid of her was to shoot her;
(2) Mr. Brown denied Plaintiff's request to attend the Association of Government Accountants' Conference;
(3) Mr. Brown denied Plaintiff's request to attend mandatory safety training;
(4) Ms. Koch informed plaintiff that she had to leave and find another position;
(5) Mr. Brown entered derogatory comments in PLaintff's mid-year and year-end performance evaluations; and

(6) The Agency failed to honor a previous promise to give Plaintiff a two percent pay increase.

*Id.* at 10.

Plaintiff avers that in September 2005, Koch met with Jackson, and told Jackson that she was a "target." *Id.* at 7. Purportedly, Koch also told her that she should leave the agency. In December 2005, Brown gave Plaintiff her year-end evaluation, which contained "derogatory comments for the performance period ending September 30, 2005." *Id.* Plaintiff was not given a mid-year appraisal in April 2006, while other supervisors allegedly received this evaluation from Brown.

In April 2006, Jackson's third-line supervisor, Richard Spinrad ("Spinrad"), detailed Jackson to the Agency's Office of Marine Aviation Operations (NMAO), despite the fact that Plaintiff wished to remain as a Budget officer in the Program Budget Analysis Division. While she was serving her detail at NMAO, Plaintiff avers that her responsibilities were diminished in comparison to her responsibilities while she was serving as the Budget director at OAR.

On July 28, 2006, Brown allegedly returned to OAR from her detail at NMOA. However, on August 1, 2006, Sprinrad and Brown, allegedly told Brown that "they were prepared to involuntarily reassign Jackson to another office if she did not voluntarily accept a reassignment and that Brown could do without her position." *Id.* at 9-10. Plaintiff opposed leaving her position at PBAD. On August 8, 2006, Sprinrad reassigned Jackson to Director for Evaluation in OAR's Office of Policy, Planning, and Evaluation (PPE). Plaintiff alleges that this reassignment was a demotion.

Plaintiff filed a second complaint with the Agency's Office of Civil Rights on August 14, 2006 in which she alleged that the agency had retaliated against her for filing her prior complaint. The Agency investigated the following issues:

(1) On April 12, 2006, OAR directed Plaintiff on a 90 day detail to NMAO;
(2) OAR colluded with NMAO to prevent her return;
(3) Upon Plaintiff's return from the detail, OAR relegated Plaintiff to an office where she was isolated from her staff, given no work assignments, not allowed to communicate regarding work, and excluded from meetings, conferences, and the like;
(4) OAR involuntarily demoted/reassigned Plaintiff to a position in PPE; and
(5) Plaintiff was subject to harassment constituting a hostile work environment by being undermined and publicly humiliated on the job.

*Id.*

Plaintiff requested that these complaints be adjudicated by an administrative judge of the EEOC. The parties engaged in discovery, and Plaintiff's attorney took depositions of several agency managers. *Id.* After the hearing had almost completed, Plaintiff withdrew her request for a hearing, and requested that the case "be returned to the Agency for the issuance of a Final Agency Decision." *Id.* The case was returned to the agency, and the agency issued a final decision on September 9, 2008, in which they found that there had been no violation of Title VII.

While at PPE, Rori Marston served as Plaintiff's first level supervisor. On October 25, 2006, Plaintiff avers that "Marston emailed Brown offensive and unjustified comments about Jackson wherein he labeled Jackson as 'passive-aggressive,' chastised her work and accused her of being non-communicative." *Id.* at 12. Brown, allegedly gave "50/50 consideration in her rating score to Marston's comments and NMAO comments." *Id.* In her 2006 review, "Brown noted as a deficiency Jackson's supervision and treatment of staff yet failed to explain and said his supervisory comments and score of 90 out of a possible 100 were the result of the EEO investigative report." *Id.*

On January 10, 2007, at a meeting, Marston told Jackson that he was mad at her for filing complaints against him, complaints which included an EEO complaint. *Id.* Moreover, he informed her that he would not meet with her without a third party present. *Id.* Plaintiff avers that during this same meeting, Alan Leonardi (an employee who was not in Jackson's chain of

command) was present. Martson, allegedly made several demands during this meeting, including, demanding that Jackson inform him of whether an attorney was drafting her emails to him.

On March 27, 2007, the Plaintiff filed a formal complaint with the EEOC, alleging the following:

(1) Marston had made false comments about her, used offensive name calling, labeled her in the work environment, and sent her disturbing emails;
(2) Marston had inappropriately provided Brown with offensive and unjustified e-mail comments to include in her performance evaluation;
(3) Marston told Plaintiff that he was angry with her for filing a complaint against him and that because of her EEO complaint, he would no longer meet with her without a third party being present; and
(4) Brown changed the weight of the supervisory element in her performance plan from 30 percent to 40 percent after the 2006 rating period had already ended.

*Id.* at 11.

Plaintiff requested a hearing in front of an Administrative Judge of the EEOC. After discovery was conducted, and after the agency submitted its motion for summary judgment, Plaintiff withdrew her request for a hearing, and the matter was referred back to the agency. Like in the prior complaint, the Agency issued a final decision which found that no discrimination had occurred.

On October 6, 2008, Plaintiff received her right to sue letter from the EEOC. The EEOC dismissed her prior complaints.

Plaintiff filed her initial complaint in the District Court for the District of Columbia on January 2, 2009. That court found that venue was improper in the District of Columbia, and on March 10, 2010, Judge Paul Friedman transferred the matter to this Court, pursuant to 28 U.S.C. 1406(a). (Doc. No. 20). Defendant has moved to Dismiss Plaintiff's Amended Complaint. A

hearing was held on the instant Motion to Dismiss on March 10, 2010. During the hearing, the parties conceded that they had completed discovery in this matter.

## II.  STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Generally, a complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, the Supreme Court has directed courts that "Rule 8 still requires a 'showing,'" of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

## III.  ANALYSIS

### A. Failure to Exhaust Administrative Remedies by Timely Contacting EEO Counselor within 45 days of Discriminatory Acts

Defendant moves for dismissal or in the alternative, summary judgment, on all Plaintiff's claims made from April 2004 to February 2005 on the grounds that Plaintiff failed to contact an EEO Counselor within 45 days of the day that the allegedly discriminatory acts occurred. Pursuant to 29 C.F.R. §1614,105(a)(1), "Aggrieved person who believe they have been discriminated against on the basis of race, color, religion, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter . . . . An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *See Elezovic v. England*, No. Civ. A. PJM 03-3649, 2005 WL 487127, at *4 (D. Md. Feb. 15, 2005) (holding that 45 day deadline is not jurisdictional but operates as a statute of limitations).

Defendant avers that Plaintiff did not contact an EEO officer until July 29, 2005, and thus, the Plaintiff's claims of discrimination which occurred from April 2004 to February 2005 should be dismissed, as Plaintiff failed to exhaust her administrative remedies as to these claims.[3] The evidence in the record demonstrates that Defendant aptly asserts that Plaintiff first contacted an EEO counselor on July 29, 2005. This was more than 45 days after each of the incidents alleged from April 2004 to February 2005. As such, the Court will **GRANT** Defendant's Motion to Dismiss as to these claims in the Amended Complaint.

### b. Allegations of Discrimination in Agency Case Nos. 05-54-00192 and 06-54-00140 Filed Beyond 90 Day Limitations Period

---

[3] The Court notes that Plaintiff has not responded to this argument in her reply brief.

Defendants aver that the claims made in Agency the agency cases, 05-54-00192 and 06-54-00140 should be barred because Plaintiff failed to file her complaint in federal court within 90 days of receiving notice of a final action taken by the agency on these claims.[4] Defendants allege that the agency issued its Final Agency Decision (FAD) on these claims via certified mail on September 10, 2008. Plaintiff filed her complaint in federal court on January 2, 2009. Plaintiff alleges that she did not receive this Final Agency Decision until October 6, 2008. Plaintiff further avers that she timely filed her complaint within the applicable 90 day limitations period by filing the claim on January 2, 2009 because "1) she filed the allegations of discrimination in the District Court for the District of Columbia, in which circuit she may file within 90 days of receipt of the right-to-sue letter; and 2) she did not receive any notice whatsoever of delivery of the right-to-sue letter until October 6, 2008." (Doc. No. 38, , at 18).

With respect to Plaintiff's first argument that this Court should apply the law of the District of Columbia, this Court does not agree. Plaintiff avers that the law of the District of Columbia should apply to this case, citing Chief Judge Spottwood Robinson's concurring opinion in *Gordon v. National Youth Work Alliance,* 675 F.2d 356 (D.C. Cir. 1982) for the proposition that the 90 day filing period is not triggered until the recipient of the letter actually receives the letter. In *Lavay Corp v. Dominion Fed. Sav. & Loan Ass'n*, 830 F. Supp. 2d 522, 526 (4th Cir. 1987) this Circuit clearly established that "[a] district court receiving a case under the mandatory provisions of §1406(a) must apply the law of the state in which it is held rather than the law of the transferor district court." The Fourth Circuit has held that the 90 day limitations period of 42 U.S.C. §2000e-16(c) "is triggered when the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup, and not when the letter is actually picked up." *Watt-Means v. Prince George's Family Crisis*, 7 F.3d 40, 42 (1993). *See*

---

[4] These claims are represented in paragraphs 15-31 of Plaintiff's Second Amended Complaint.

*also Harvey v. City of New Bern Police Dept.*, 813 F.2d 652 (4th Cir. 1987), holding the date that the right to sue letter is delivered to a plaintiff's home is the date on which the 90 day filing period is triggered.

As the right to sue letter was delivered via certified mail to Plaintiff on September 13, 2008, Plaintiff's Complaint was untimely filed.  However, Plaintiff requests that this court apply the doctrine of equitable tolling to this case in light of plaintiff's "reliance upon the case law of the circuit in which she was filing suit and the fact that she did not receive any notice at her home address of the right to sue letter until the day she received the letter, October 6, 2008." (Doc. No. 38, at 20).

The Fourth Circuit has held that "exceptions to the statue of limitations should be sparingly applied . . . . Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action. To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (internal citations omitted). Plaintiffs cites *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) for the proposition that equitable tolling can also apply when "extraordinary circumstances beyond plaintiff's control or external to her own conduct prevented her from filing on time." (Doc. No. 44, at 1).   Plaintiff has failed to show, or even allege that the Defendant wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.  Plaintiff alleges that the equitable tolling doctrine should apply because she relied on the case law of the circuit in which she filed her original suit (which purportedly uses an "actual receipt" doctrine), and she did not receive her right to sue until she received her letter on October 8, 2008.

None of Plaintiff's proffered reasons for invoking the equitable tolling doctrine remotely indicate that it was the defendant's deceptive conduct that led to the untimely filing of Plaintiff's complaint. Moreover, it is clearly established that the law of the transferee court is controlling. The fact that Plaintiff was relying on the D.C. Circuit's actual receipt doctrine is not sufficient to invoke the equitable tolling doctrine. As it is uncontested that the Plaintiff's FAD letter was mailed via certified mail on September 10, 2008, the fact that Plaintiff did not actually receive the letter until October 8, 2008 does not constitute an extraordinary circumstance sufficient to toll the 90 day limitations period for filing her claim. As Defendants point out, Plaintiff still had 67 days to file her claim after receiving her right to sue letter on October 6, 2008. Other than when the defendant hides a cause of action from the plaintiff, equitable tolling should only be used when "extraordinary circumstances beyond plaintiff's control [make] it impossible to file claims on time." *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). It was not impossible in this case for the Plaintiff to timely file her claim. Accordingly, the Court will **DISMISS** the claims made in paragraphs 15-31 of Plaintiff's Complaint.

### B. Claims Under Title VII

As the claims of discrimination made from April 2004 to February 2005 are time barred, as well as the allegations in paragraph 15-31, the Court will focus its analysis on the remaining claims in this Complaint. Plaintiff avers that she has been subjected to racial discrimination, retaliation, and a hostile work environment, all in violation of Title VII. Establishing a prima facie case of racial discrimination under Title VII requires a plaintiff to show that "(1) he is a member of a protected class, (2) he was performing satisfactorily, and (3) he suffered adverse employment action, (4) under circumstances giving rise to an inference of discrimination." *Hatton v. Thomasville Furniture Industries, Inc.*, 2 Fed.Appx. 302, 303-04, 2001 WL 52679, at *1 (4th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

Assuming *arguendo* that Plaintiff had made the requisite showing under the first three prongs of the test articulated in *Hatton*, there is nothing in the pleadings and no evidence in the record that that give rise to an inference of discrimination, an essential element of making a prima facie showing for a Title VII claim based on race discrimination. The allegations in the complaint which are not time barred, simply do not give rise to indicate that any racial animus motivated the actions of the Defendant in this case. The allegations are cited below:

- Jackson was subjected to harassment constituting a hostile work environment, including being undermined and publicly humiliated, having her role as Budget Director demeaned, and not being afforded the same support given to other OAR employees.
- Brown conducted secret meetings with Jackson's staff to inform staff that Jackson had filed an EEO complaint against him, and to generate complaints about Jackson that he could use against her. Childress, Brown and Marston called Jackson names, labeled her in the work environment, warned employees that Jackson had filed an EEO complaint, encouraged employees to notify management and encouraged staff to submit statements about Jackson they could use against her, encouraged employees to stay away from Jackson, and ostracized her in the workplace.
- In September 2006, Marston made false accusations about Jackson, used offensive name calling directed at Jackson in the work place, told PPE staff to beware of her because she had filed an EEO complaint, and sent her hostile emails.
- In October 2006, Marston inappropriately provided Brown with offensive and unjustified comments to place in Jackson's 2006 performance evaluation. Marston said Jackson was just angry because she was put in a job she knew nothing about.
- In November 2006, Brown improperly changed the weights on Jackson's supervisory critical elements from 30% to 40% after the September 30, 2006 performance rating period had already ended and included in the performance evaluation an offensive email had solicited and received from Marston. Brown told Jackson that the supervisor comments that he put on her performance evaluation and the overall score were a result of the EEO ROI.
- In January 2007, in a meeting to address Marston's offensive email sent to Brown, Marston told Jackson that he was angry with her because Jackson had filed an EEO complaint and talked to "that lady in Florida" (the EEO investigator) and that, because of her EEO complaint, he would no longer meet with her without a third party present.

The claims here are devoid of any hint of racial discrimination. Although the allegation may indicate hostility in the workplace, Plaintiff has failed to carry her burden in showing that the circumstances that she endured gave rise to an inference of racial discrimination. A claim for racial discrimination under Title VII cannot prevail under the facts of this case, which do not

insinuate that any of the Defendant's actions were motivated by race. As such, the Court will **GRANT** Defendant's Motion to Dismiss as to Count I of Plaintiff's Complaint.

### C. Hostile Work Environment (Count II)

To properly allege a claim for a racially hostile work environment under Title VII, the Plaintiff must allege that the Defendant's conduct was (1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001). To support her argument that the Defendant's conduct was based on race, recounts several events which occurred during the relevant time period of this Complaint. (Doc. No. 38, at 27-28). However, only one of Plaintiff's proffered reasons for alleging that Defendant's conduct was based on race has any connection to the Defendant's race. Plaintiff avers: "Brown's shooting comment was based on her race in that he would not have made the same comment to a non-black, laughed when she complained about the comment, and made the comment at the same session where he expressed his concern about Jackson making him sound like a bigot because of the 2004 interviews of black candidates." Plaintiff bases her reason for Brown making his "shooting comment" on improper speculation. While the comment may have been improper, such a comment does not support an allegation of racial discrimination. The comment made no reference to race. The fact that Brown may have laughed about the comment still does not support an allegation that his comment was racially motivated. When Jackson brought his alleged improper conduct regarding the 2004 interviews to his attention, Brown's remarks that Jackson made him sound like a bigot appears to reflect Brown expressing an opinion. However, there is no indication that this comment was based on the race of Jackson. Jackson's allegations of the Defendant's racially motivated acts are based on pure conjecture, thus failing to properly plead a claim for a hostile work environment.

In the hearing on this matter, Plaintiff indicated that she was also basing her claim for hostile work environment on retaliation. In *Thorn v. Sebelius*, the Court recognized that "*Burlington Northern* would seem to allow for the possibility that a hostile work environment could amount to actionable retaliation, but only if 'it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" 2011 WL 344127, DKC 10-0299 (D. Md. Feb. 1, 2011).[5] The Amended Complaint appears to state a cognizable claim for retaliatory hostile work environment, and therefore, the Court will not dismiss this claim from the Plaintiff's Amended Complaint. However, the Court notes that the Plaintiff carries the burden of proving the severity and pervasiveness of the hostility that she endured in her work environment.

As the Court found in Count I, the facts alleged do not support a cognizable claim that the Defendant's conduct was based on race. Therefore, the Court will **GRANT** –in-PART and **DENY**-in-PART Defendant's Motion to Dismiss Count II of the Amended Complaint.

### D. Retaliation (Count III)

Plaintiff avers that the defendant retaliated against her for engaging in a protected activity—filing EEO complaints against the defendant. In order to establish a prima facie case of retaliation under Title VII, the Plaintiff must demonstrate that (1) he engaged in a protected activity; (2) the agency took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Davis v. Dimensions Health Corp*, 639 F. Supp. 2d 610, 616 (D. Md. 2009).

The Court agrees with Plaintiff that there is no dispute that Plaintiff has demonstrated that she engaged in a protected activity, as she filed three EEO complaints against Defendant,

---

[5] In the Court's discussion of Count III of the Amended Complaint, the Court finds that Plaintiff has adequately stated a claim for retaliation, and therefore, the Court will not engage in a lengthy discussion of retaliation here.

satisfying this element of the retaliation claim. However, there is a dispute as to whether the actions which Plaintiff purports to be "adverse employment actions" actually constitute actionable conduct. In *Burlington Northern and Santa Fe Ry. V. White*, 548 U.S. 53 (2006), the Supreme Court stated that to make a plausible claim for retaliation, the plaintiff must "show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Id.* at 68. Plaintiff directs the Court to several actions which the Plaintiff claims to constitute adverse employment action against her:[6]

1) Koch's remonstrations to Jackson in September 2005 that she was a target and had to leave PBAD immediately;

2) The derogatory comments in December 2005 in the performance evaluation;

3) The Agency's failure to pay Jackson the promised 2% pay raise;

4) Brown's failure to give Jackson a mid-year appraisal in early 2006;

5) Spinrad's detail of Jackson to NMAO in April 2006;

6) Fuller's efforts to extend the detail after consulting with PBAD;

7) The isolation of Jackson and failure to provide her work assignments upon her return to PBAD on July 28, 2006;

8) The reassignment and demotion to PPE on August 8, 2006;

9) The offensive comments in the 2006 performance evaluation;

10) Marston's angry comments concerning Jackson's EEO activity in 2007.

(Doc. No . 38, at 27).

---

[6] The Court notes that several of these claims are time-barred. As several of these claims are time-barred, it appears that in the allegations made in the outline above, only claims 9-10 comport with the allegations made in paragraphs 32-38 (the claims which are not time-barred) of Plaintiffs' Amended Complaint.

For the sake of ease in distinguishing the claims that are time-barred from the claims that are not time barred, the Court will assess the claims made in paragraphs 32 through 38 of the Amended Complaint, as these claims were timely filed. From the Amended Complaint, it appears as though Plaintiff has adequately pled a claim for retaliation as to some of her allegations.

One allegation warrants special note. In her Amended Complaint, Plaintiff avers that "Brown conducted secret meetings with Jackson's staff to inform staff that Jackson had filed an EEO complaint against him, and to generate complaints about Jackson that he could use against her. Childress, Brown, and Marston called Jackson names, labeled her in the work environment, warned employees that Jackson had filed an EEO complaint, encouraged employees to notify management and encouraged staff to submit statements about Jackson they could use against her, encouraged employees to stay away from Jackson, and ostracized her in the workplace." (Doc. No. 12, at 8, ¶32). Defendant argues that "the undisputed evidence shows that this meeting was convened at the request of Plaintiff's staff—not her employer—to discuss the staff's serious concerns with Plaintiff and thus it cannot support a retaliation claim." (Doc. No. 45, at 1). Having reviewed the record in this case, it appears as though the "secret meeting" that the Plaintiff referenced was in fact initiated by her staff to express concerns about the Plaintiff. Plaintiff has not responded to this assertion by Defendant, and accordingly, this meeting shall not be considered as factual support for a retaliation claim.

While the "secret meeting" that Plaintiff references cannot be the basis for her retaliation claim, Plaintiff's Complaint also indicates that her supervisors called her names, labeled her in the workplace, warned other employees that she had filed an EEO Complaint, and engaged in other retaliatory acts. The Court takes note of *Burlington's* admonition that "[a]n employee's

decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68. The Court believes that the allegations that Plaintiff makes rise above the level of constituting a "petty slight" or a "minor annoyance," and if proven to be causally connected to Jackson's filing of the EEO complaint, such actions could constitute retaliatory conduct. At this juncture, the Court finds that Plaintiff has alleged a cognizable claim for retaliation under Title VII for the allegations made in paragraphs 32, 33, and 36 of Plaintiff's Amended Complaint.

In paragraphs 34 and 35 of Plaintiff's Amended Complaint, Plaintiff avers that "Martson improperly provided Brown with offensive and unjustified comments to place in Jackson's 2006 performance evaluation. . . . In November 2006, Brown improperly changed the weights on Jackson's supervisory critical elements from 30% to 40% after the September after the September 30, 2006 performance rating period had already ended and included in the performance evaluation an offensive email [he] had solicited and received from Marston. Brown told Jackson that the supervisor comments that he put on her performance evaluation and the overall score were a result of the EEO ROI." (Doc. No. 12, at 9, ¶34-35). Defendant argues that "the undisputed evidence shows that the methods of evaluation was not an adverse employment action or one that can reasonably be assessed as materially adverse because Plaintiff earned a score of 90 out of 100 and received a $2,500 bonus." (Doc. No. 31-2, at 33). Plaintiff claims that her performance evaluation was a materially adverse action taken by the Defendant despite the high score she received and the bonus that she received as a result of this performance evaluation. It defies reason to believe that an evaluation which yielded monetary rewards in the form of a bonus constituted an adverse employment action. As such, the Court

finds as a matter of law that the averments made in paragraphs 34 and 35 of Plaintiff's Amended Complaint do not constitute adverse employment actions.

Therefore, the Court will **GRANT** in part and **DENY** in part Defendant's Motion to Dismiss Count III of the Amended Complaint, with the result that the Court will disregard the averments made in paragraphs 34 and 35 of the Amended Complaint. Additionally, Plaintiff's claims that she was retaliated against because of a "secret meeting" that Defendant conducted will be disregarded, as the record demonstrates that this claim does not have legal significance. Accordingly, the Court will allow further discovery on the remaining allegations in paragraph 32 of the Amended Complaint—namely, whether Plaintiff was "undermined and publicly humiliated, having her role as Budget Director demeaned, and not being afforded the same support given to other OAR employees;" and whether "Childress, Brown, and Martson called Jackson names, labeled her in the work environment, warned employees that Jackson had filed an EEO Complaint, encouraged employees to notify management and encouraged staff to submit statements about Jackson they could use against her, encouraged employees to stay away from Jackson, and ostracized her in the workplace." (Doc. No. 11, at 8, ¶32). Moreover, the Court will allow discovery on the allegations presented in paragraphs 33 and 36 of the Amended Complaint.

## CONCLUSION

In sum, the Court finds that the Amended Complaint is devoid of any hint of racial discrimination, and grants Defendant's Motion to Dismiss Count I. For Count II, the Court grants Defendant's Motion to Dismiss Plaintiff's hostile work environment based on race but will deny Defendant's Motion to Dismiss Plaintiff's claim for a retaliatory hostile work environment. Finally, in Count III, the Court will deny Defendant's Motion to Dismiss Count

III for retaliation, pursuant to the discussion in this Opinion. An Order Consistent with this Memorandum Opinion will follow. The Court will schedule a telephonic scheduling hearing with the parties.


Date:   March 29, 2011                                    /s/
                                                Alexander Williams, Jr.
                                                United States District Judge